On Rehearing.
White, J.
The facts of this cause have been so fully stated in the-opinions hitherto expressed, that there is no necessity either to restate- or even recapitulate them.
Between plaintiffs and defendant we see 'no reason to change our former conclusion, which has not been questioned in either the oral or printed arguments submitted on the rehearing, wherein the entire discussion at bar restricted itself to the. issue between the plaintiffs and' intervenors. Upon that issue we have concluded that our original' decree was erroneous, and that the claim of intervenors should be-maintained.
First — Because we consider that the cotton was duly delivered at the gin house.
Second — Because we think the shipment was a delivery. How was-that shipment made ? By “ Heyner to Chaffe & Co. for account of Frank & Co.” What was the effect of that shipment thus made as-between Heyner, Frank & Co. and the carrier ? It was to make Frank' & Co. the consignors, to place the cotton in- the hands of the common-carrier for them, and if lost, under the rule of res peril domino, the loss-would have been that of the consignor. That such is the effect of such a shipment was long since determined by the Supreme Court of the-United States in Grove vs. Brien, 8th Howard, 429. The facts, as stated- *625 in that case, in the opinion of the court, which was pronounced by Mr. Justice Nelson, were as follows :
“Brien being indebted to Gilmor, on the 14th of March, 1843, shipped to Eoule & Sons 500 kegs of nails, the property in question, for the purpose of securing such indebtedness, and took from the master of the boat the following- receipt or bill of lading:
“Received, March 14,1843, of J. McP. Brien, 500 kegs of nails, to be delivered to W. Eoule & Sons, Alexandria, D. 0., for the use of Robert Gilmor, Esq., Baltimore, in good order.”
In commenting on these facts, strictly analogous to those before us, the court said: “ The delivery of the goods by Brien to the master, and the bill of lading taken in the name of Gilmor for the purpose of securing to'him an existing indebtedness, operated as a transfer of the legal title; and the shipment therefore was not only in point of fact, but in judgment of law for and on his account. Gilmor was the consignor. The effect of a consignment of goods generally is to vest the property in the consignee; but if the bill of lading is special to deliver the goods to A for the use of B, the property vests in B, and the action must be brought in his name in case of loss or damage.”
No authority has been produced even questioning the correctness of this case, and we think it properly enunciates the now settled commercial law on the subject.
It is said that the case at bar differs from Grove vs. Brien, inasmuch'as in the latter the consignees had-accepted the consignment. An examination of the briefs of counsel in Grove vs. Brien indicates that the main dispute was as to whether Gilmor, the consignor, had consented to the shipment of the goods in his name. We cannot understand how the acceptance or non-acceptance by a consignee can be held as destroying the title of the consignor to goods consigned; such acceptance may or may not invest the consignee with the consignor’s title so as to prevent the creditors of the latter from levying on the property as yet belonging to the consignor, but this is an entirely different proposition from that which would enunciate the doctrine, that where A consigned goods to B as consignee, the mere refusal of B to accept the consignment destroyed the consignor’s title to the property consigned. To sanction such a theory would be destructive of all the law merchant, as applied to bills of lading, and place every consignor completely at the mercy of the person to whom he consigned his goods.
Third — Even if we were to depart from the settled rule of commercial law, on the subject of bills of lading, and treat Heyner as the consignor, although the shipment was made for account of Erank & Co., our conclusion would be the same, for then the shipment would become one shipment, and the plaintiffs would be bound by the terms of the *626 bill ot lading, which they have accepted by the delivery and acceptance of the seventy-six bales for account of shipper. Either the bill of lading was separate or it was not. If separate then as to the ninety-five bales it was for account of Frank & Co., and the ninety-five bales were theirs. If not separate then it could not be divided so as to enable the plaintiffs to accept a part and reject the remainder.
It is therefore ordered that as regards the defendant, our former ■decree remain undisturbed; that as regards the intervenors our former decree be set aside; and it is further ordered that the judgment below ¡rejecting the demand of intervenors be and the same is hereby reversed; •and proceeding to render such judgment as should have been rendered below, it is ordered that the intervention of Fiank & Co. be maintained, and they be decreed to be the owners of the ninety-five bales of cotton in controversy, with costs in favor of the intervenors in both courts.